**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CITGO PETROLEUM CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:18-cv-2185** |
| | § | |
| | § | |
| | § | |
| **SAT RAJ, INC. and** | § | |
| **SATWINDER MULTANI,** | § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

Plaintiff, CITGO Petroleum Corporation, files this Original Complaint against Defendants Sat Raj, Inc. and Satwinder Multani, and would show the Court as follows:

## I.   PARTIES

1.   Plaintiff CITGO Petroleum Corporation ("CITGO") is a Delaware corporation with its principal place of business in Houston, Texas.

2.   Defendant Sat Raj, Inc. ("Sat Raj"), is a foreign corporation formed under the laws of New Jersey with its principal place of business at 1200 Laurel Oak Rd., Suite 108, Voorhees, New Jersey 08043.   As set forth more fully below, Sat Raj executed a Marketer Franchise Agreement with CITGO which requires performance in Texas, at least in part.   Sat Raj therefore engages in business in this state.   Sat Raj does not, however, maintain a place of business nor does it have a registered agent for service of process in the State of Texas. CITGO will serve Sat Raj in accordance with Federal Rule of Civil Procedure 4(h).

3.     Defendant Satwinder Multani ("Multani") is a nonresident of Texas, whose address is 8 Laurie Drive, Voorhees, New Jersey 08043.  Upon information and belief, Multani is the president of Sat Raj.  As set forth more fully below, Multani executed a guaranty agreement with CITGO in which he guaranteed the financial obligations of Sat Raj up to $700,000.  This guaranty agreement requires performance in Texas, at least in part.  Multani therefore engages in business in this state.  Multani does not, however, maintain a place of business in Texas nor does he have a registered agent for service of process in this state. CITGO will serve Multani in accordance with Federal Rule of Civil Procedure 4(e).

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to Section 39 of the Lanham Trademark Act (the "Lanham Act"), 15 U.S.C. § 1121. *See* 28 U.S.C. §§ 1331, 1338(a) and (b). Additionally, jurisdiction is also proper because CITGO and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000. 28 U.S.C. § 1332.

5.     Sat Raj is subject to personal jurisdiction in Texas because the claims in this case arise out of Sat Raj's contacts with Texas.  Those contacts include the performance of certain contracts in Texas.  One of the principal contracts at issue in this matter, the Marketer Franchise Agreement between CITGO and Sat Raj, was negotiated, executed, and requires performance in Texas, at least in part.  The claims asserted by CITGO against Sat Raj arise from Sat Raj's obligations under the MFA and thus relate to or arise from Sat Raj's activities in Texas. Moreover, in that agreement, CITGO and Sat Raj agreed to submit to the jurisdiction of the United States District Court for the Southern District of Texas, which the parties agreed would serve as the "exclusive venue for any proceeding relating to or arising out of this Agreement." *See* Marketer Franchise Agreement § 20(a).  The parties additionally agreed to "waive all

2

questions of personal jurisdiction." *See id.* Accordingly, Sat Raj is subject to specific jurisdiction in Texas for claims relating to or arising out of the Marketer Franchise Agreement.

6.      Multani is also subject to personal jurisdiction in Texas because the claims in this case arise out of his contacts with Texas. His contacts also include the performance of certain contracts in Texas.  Another one of the principal contracts at issue in this matter, the Guaranty Agreement between CITGO and Multani, required performance in Texas, at least in part.  The claims asserted by CITGO against Multani arise from Multani's obligations under this agreement and thus relate to or arise from Multani's activities in Texas. Accordingly, Multani has specific contacts in Texas relating to the claims asserted herein and is subject to specific jurisdiction in Texas.

7.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the Southern District of Texas. In addition, certain acts, omissions, statements, and representations of the Defendants, which form the basis of the claims asserted herein, were committed within this judicial district.  Furthermore, the parties contractually agreed to govern any disputes arising from their contractual agreements under Texas law, and Sat Raj and CITGO also agreed that the exclusive venue for any proceeding arising out of or relating to the Marketer Franchise Agreement would be the United States District Court for the Southern District of Texas.  As such, this matter is properly before this Court.

8.      All conditions precedent to the filing of this cause of action have been satisfied.

## III.   FACTS

9.      This lawsuit arises out of Sat Raj's failure to fulfill its payment obligations to CITGO under the parties' Marketer Franchise Agreement; its sale of non-CITGO branded gasoline from service stations displaying CITGO's logos, trademarks, and protected images; and Mr. Satwinder Multani's refusal to fulfill his payment obligations to CITGO as guarantor of Sat Raj's indebtedness under the Guaranty Agreement between Multani and CITGO.   Although CITGO has demanded payment from Defendants under both of the relevant agreements, neither Defendant has fulfilled its payment obligations to CITGO.

10.      CITGO is a refiner and marketer of petroleum products with origins dating back to 1910. Over the years, CITGO has earned the trust and goodwill of generations of Americans by producing and marketing high quality petroleum products. As such, CITGO possesses a decidedly strong and loyal customer base who has become accustomed to obtaining a certain level of service and quality of product from locations displaying CITGO signs and logos.

11.      CITGO markets its gasoline and diesel fuel ("Motor Fuels") in many parts of the United States. CITGO's primary means of marketing Motor Fuels is through independent wholesale distributors (also known as marketers) who purchase Motor Fuels from CITGO and resell the products to independent service station dealers and convenience store operators. The wholesale distributors are authorized by CITGO to market Motor Fuels under CITGO's trademarks, trade names and other brand identifications and to authorize their retail-dealer customers to sell Motor Fuels under the CITGO brand. CITGO requires its branded marketers, like Sat Raj, to recognize the standards of quality associated with CITGO and its products, and to similarly protect CITGO's brand, marks, and protected images under which they operate.

12.      To ensure the uniformity of its logo and other protected marks, CITGO often provides its marketers with CITGO branding material to display at the retail locations to which

4

the marketers supply CITGO Motor Fuels.  The costs associated with such branding materials, including any installation costs paid by CITGO, are amortized over a sixty (60) month period on a straight-line basis.  Should any of the retail locations to which a marketer has distributed CITGO's brand identification items debrand within the sixty-month amortization period, the marketer must reimburse CITGO the unamortized portion of those costs.

13.    Pursuant to the terms of a certain Marketer Franchise Agreement between CITGO and Sat Raj, Sat Raj is one of CITGO's marketers in New Jersey.  Pursuant to its audit rights under Section 5(c) of the MFA, CITGO recently audited Sat Raj's payment card transaction data from January 1, 2017 through February 2018, and discovered that Sat Raj sold mislabeled, misbranded, or otherwise non-branded motor fuels from service stations displaying CITGO's trademark, trade dress, and other protected images.  Sat Raj's sale of non-branded fuel from CITGO-branded service stations not only violates the Marketer Franchise Agreement, but also the Petroleum Marketing Practices Act and the Lanham Act.  15 U.S.C. § 1114, 1125, 2802(c)(10).  CITGO therefore terminated the Marketer Franchise Agreement with Sat Raj on May 17, 2018, and instructed Sat Raj to debrand all CITGO locations to which it supplies CITGO Motor Fuels.

14.    Several of the service stations Sat Raj was instructed to debrand fell within the sixty-month amortization period described above.  Sat Raj has failed to reimburse CITGO for the unamortized costs associated with the branding materials furnished by CITGO to these service stations.  Sat Raj has also failed to fulfill its payment obligations under the Marketer Franchise Agreement by failing to remit full payment to CITGO for certain fuel purchases made in 2018.  Despite demand for payment, Sat Raj has failed to fulfill its payment obligations to CITGO under the Marketer Franchise Agreement and is, thus, in breach of that contract.  CITGO

tendered Sat Raj's indebtedness to Multani pursuant to the Guaranty, but he, too, has failed to fulfill his payment obligations under that agreement and is in breach of that contract.

15.     Because of the Defendants' repeated and intentional disregard of their legal and contractual obligations, CITGO has been forced to seek redress from this Court.

### A.     The Marketer Franchise Agreement

16.     On June 4, 2011, CITGO and Sat Raj executed a "Marketer Franchise Agreement," in which Sat Raj agreed to purchase and lift specified quantities of Motor Fuels from CITGO, and CITGO agreed to sell and deliver the Motor Fuels to Sat Raj, for resale by Sat Raj under CITGO's brand name, trade dress, and trademarks to consumers and retailers. *See* Marketer Franchise Agreement ("MFA") § 2.  Such fuel liftings were to occur monthly and in the quantities set forth in the MFA.  *See id.*

17.     The MFA became effective on August 1, 2011, and was scheduled to expire on July 31, 2014, but automatically renews for successive three-year periods unless validly terminated. *Id.* at § 1.  The MFA remained in effect until CITGO terminated it on May 17, 2018.

18.     Sat Raj agreed to pay CITGO for the Motor Fuels lifted by the date set forth on each invoice and in accordance with the terms prescribed by CITGO's Credit Department, which, at the time the MFA was executed, were "one percent (1%) Electronic Funds Transfer (EFT) ten (10) days." *See id.* at § 5(a).

19.     The MFA authorizes CITGO "to audit all delivery, inventory and sales records of [Sat Raj]. . ." *Id.* § 5(c).  The MFA also obligates Sat Raj to accept CITGO Payment Cards and to process the Cards through the CITGO Electronic Point of Sale ("EPOS") Network. *Id.* § 12(a).  The MFA further grants CITGO a "security interest in all Payment Card invoices and proceeds from such Payment Card invoices to secure the payment of Motor Fuel(s) purchases from CITGO," *id.* § 5(e), and authorizes CITGO "to apply the proceeds of Payment

Card invoices or any other credits which may be owing to [Sat Raj] toward the payment of any indebtedness owed by [Sat Raj] to CITGO." *Id.* §§ 5(e), 12(c).

20.     In the event Sat Raj failed to make timely payments, the MFA authorizes CITGO to assess "finance charges in an amount equal to the lesser of (i) the maximum amount allowed by applicable law or (ii) one and one-half percent (1.5%) per month." *Id.* at § 5(a).  The MFA further authorizes CITGO to restrict Sat Raj's credit, deny it access to CITGO's fuel terminals, and withhold from it any rebates, discounts or benefits from CITGO programs in which it may otherwise participate.  *Id.* at § 5(a).  Sat Raj's failure to pay invoices timely also constitutes grounds for the MFA's termination and/or non-renewal by CITGO.  *Id.*

21.     Upon CITGO's request, Sat Raj must furnish CITGO with "security agreements, financing statements, personal guaranties, letters of credit, or other collateral in forms and amounts that may be requested by CITGO." *Id.* at § 5(b).

22.     The MFA grants Sat Raj the right to use CITGO's brand names, trademarks and other forms of CITGO identification in connection with the resale of CITGO Motor Fuels to retailers and consumers. *Id.* at §6. To ensure the branding materials displayed at CITGO-branded service stations are uniform, CITGO furnishes its marketers with certain CITGO brand identification items ("Branding Materials") for use at the CITGO-branded retail locations ("Locations") to which the marketer supplies CITGO Motor Fuels for resale to consumers. These Branding Materials include items bearing CITGO's brand names, trademarks and other forms of CITGO identification.  Such Branding Materials are a valuable asset to CITGO and the components thereof are registered trademarks protected under federal law.

23.     All CITGO Branding Materials furnished by CITGO to any Location, including any installation costs paid by CITGO, "shall be amortized over a sixty (60) month period on a

7

straight-line basis." *Id.* at 6(j).  "Should any such Location be debranded within the sixty (60) month amortization period, [the Location's] Marketer shall pay to CITGO the unamortized portion of the costs associated with the CITGO Branding Material as of the date of debranding." *Id.*

24.     The MFA prohibits Sat Raj from using CITGO's Branding Materials in connection with the sale of non-branded fuel or Motor Fuels that were not obtained from CITGO under the MFA. *Id.* at §6(b). Sat Raj must also identify and label any non-CITGO Motor Fuels it sells as non-CITGO products in order to make it unmistakably clear to consumers that such Motor Fuels are not CITGO Motor Fuels. *Id.* at §6(c).  Sat Raj's failure to comply with the terms governing its use of CITGO's brand names, trademarks, and other forms of identification constitutes grounds for the MFA's termination and/or non-renewal by CITGO.  *Id.* at §6(e).

25.     The MFA requires Sat Raj to indemnify CITGO under a broad range of circumstances, including for "any fines, penalties, taxes, judgments, charges, or expenses, including attorneys' fees and costs of litigation, for violations of any Law caused by any act or omission, in whole or in part, whether negligent or otherwise, of [Sat Raj]." *Id.* at § 16.

26.     Texas law expressly governs the MFA, whose terms, the parties agreed, "were negotiated and are to be performed, at least in part, in Harris County, Texas." *Id.* at § 20(a). CITGO and Sat Raj further acknowledged that "Texas is a convenient and reasonable forum" for the resolution of any disputes relating to or arising out of the MFA, which the parties agreed shall be exclusively resolved in the United States District Court for the Southern District of Texas, Houston Division.  *Id.*  As such, CITGO and Sat Raj "irrevocably submit[ted] themselves to the jurisdiction of the United States District Court for the Southern District of Texas, Houston

Division" and waived "all questions of personal jurisdiction for the purposes of carrying out this Subsection." *Id.*

27.     Moreover, the parties expressly waived their rights to a jury trial on any claim based upon, relating to or arising out of the MFA. *Id.* at § 21.

28.     The MFA further provides that Sat Raj "shall pay, in addition to all other amounts payable, the actual expenditures of CITGO, including attorneys' fees, for legal process or proceeding to enforce any right or obligations" of the MFA.  *Id.* at § 22(e).

### B.     The Guaranty

29.     In furtherance of the MFA, and pursuant to its contractual right to request "security agreements, financing statements, personal guaranties, letters of credit, or other collateral in forms and amounts that may be requested by CITGO," CITGO demanded additional security from Sat Raj in the form of a personal guaranty from its president, Satwinder Multani. *Id.* at § 5(b). Consequently, on August 2, 2017, Multani executed a guaranty agreement ("Guaranty") in favor of CITGO.

30.     The Guaranty became effective on August 2, 2017, for a period of seven years and obligates Multani to unconditionally guarantee Sat Raj's payment obligations to CITGO:

> [Multani] hereby unconditionally guarantees the payment when due of all of [Sat Raj]'s indebtedness now or hereafter owed to CITGO, as provided herein. The term "Indebtedness" shall include every payment obligation which [Sat Raj] has or may have to CITGO; regardless of the form thereof and whenever due; whether joint or several; and whether or not barred at any time by any statute of limitations; all in the broadest sense. [Multani]'s liability under this guaranty is limited to $700,000.00.

Guaranty § 1.

31.     Multani's obligations under the Guaranty are broad.  Multani waived "notice of acceptance of this Guaranty, presentment, demand, protest, notice of dishonor, any right to require CITGO to commence suit against any party liable on the indebtedness, and any defense

based upon any election of remedies by CITGO," *id.* at § 3, and further waived "notice of new or additional obligations of [Sat Raj] to CITGO, and the benefit of any statute of limitations affecting (i) [Multani's] obligations and their enforcement, or (ii) CITGO's rights of recovery." *Id.*

32.     Indeed, Multani expressly agreed that CITGO could, among other things, do one or more of the following without notice or consent:

a) Renew, compromise, extend, accelerate, or otherwise change the terms of any of the indebtedness;
b) Take and hold security for all or part of the indebtedness or for the performance of the Guaranty, and exchange, enforce, waive, and release any security;
c) Proceed directly against Multani, without first proceeding against Sat Raj or any other person or against any other security CITGO may have.

*Id.* at § 4.

33.     Under the terms of the Guaranty, Multani agreed to remain "informed of [Sat Raj]'s financial condition, and of all other circumstances bearing upon the risk of nonpayment of the indebtedness, which diligent inquiry would reveal." *Id.* at § 8.

34.     CITGO and Multani agreed that the Guaranty "shall be governed and construed by and in accordance with the laws of the State of Texas." *Id.* at § 12.

35.     The Guaranty further provides, "If CITGO enforces this Guaranty, CITGO shall be entitled to reasonable attorneys' fees and costs, plus interest thereon, and on the indebtedness, from due date until paid, at the rate of ten percent (10%) per annum or the maximum rate permitted by law, whichever is less." *Id.*

36.     Multani provided a financial statement and credit application in connection with the Guaranty, which CITGO relied upon in accepting the Guaranty from Multani and extending credit to Sat Raj under the MFA. *Id.* at § 7.

### C.   Sat Raj Failed to Pay Invoices Issued under the MFA

37.   Pursuant to the parties' respective rights and duties under the MFA, Sat Raj purchased Motor Fuels from CITGO.  These purchases were made by Sat Raj "lifting" Motor Fuels from CITGO's fuel terminal and paying for those purchases through subsequently-executed electronic funds transfers drafted from Sat Raj's bank account.[1]

38.   Moreover, pursuant to the parties' respective rights and duties under the MFA, Sat Raj incurred additional charges, including those relating to its use of CITGO's Electronic Point of Sale ("EPOS") Network, fleet rebate program, and a site evaluation charge, that separately became due on May 8, 11, 16–18, 20, 22, and 23, 2018, and June 11, 2018.  *See id.* § 12; Invoices dated April 30, 2018, May 1, 8, 16–18, 20, and 31, 2018, and June 1, 2018.

39.   CITGO issued invoices to Sat Raj for the Motor Fuels purchased and other ancillary charges (such as Sat Raj's use of CITGO's EPOS Network), which Sat Raj was obligated to pay in accordance with the terms set forth in the Marketer Franchise Agreement. MFA § 5(a); *see also* Invoices dated May 3, 4, 9–13, 15–17, 2018.

40.   Sat Raj owes CITGO a total of $839,567.48 in unpaid fuel purchases and other related charges, exclusive of the permitted service charge, attorneys' fees, costs, expenses, or other chargeable amounts for which Sat Raj is responsible. CITGO's damages are increasing daily.

41.   CITGO has demanded payment from Sat Raj for sums due and owing to CITGO. In violation of its contractual obligations under the MFA, Sat Raj has failed to remit payment to CITGO.

---

[1]    "Lift" is a term of art within the industry which refers to the withdrawal and removal of fuel from a fuel storage tank.

### D. **Sat Raj Failed to Pay for Branding Materials**

42.     CITGO furnished Sat Raj with certain Branding Materials for display at CITGO-branded retail locations to which Sat Raj supplied CITGO Motor Fuels for resale to consumers. The costs of such Branding Materials are amortized over a sixty-month period on a straight-line basis; Sat Raj must reimburse CITGO the unamortized costs associated with the CITGO Branding Material for any Location debranded within the amortization period.  MFA § 6(j).

43.     As a result of Sat Raj's sale of non-CITGO fuel from CITGO-branded service stations and concomitant violations of the Lanham Act (described more fully below), CITGO notified Sat Raj on May 17, 2018, of its termination of the Marketer Franchise Agreement (effective immediately) and instructed Sat Raj to debrand the Locations to which Sat Raj supplied CITGO Motor Fuels for resale.   The unamortized balance for Branding Materials furnished by CITGO to Sat Raj for these Locations total $562,946.61, exclusive of the permitted service charge, attorneys' fees, costs, expenses, or other chargeable amounts for which Sat Raj is responsible. The MFA obligates Sat Raj to pay this sum to CITGO. MFA § 6(j). After accounting for credits in Sat Raj's favor, Sat Raj is indebted to CITGO in the amount of $545,166.31 for unpaid fuel purchases, the unamortized balance for Branding Materials, and other charges under the MFA, exclusive of interest and reimbursable costs.  *Id.* §§ 5(e), 12. CITGO has demanded payment from Sat Raj for sums due and owing, but Sat Raj has failed to remit payment to CITGO.

### E. **Sat Raj Sold Non-CITGO Branded Motor Fuels under CITGO's Trademark and Branding Materials**

44.     The Branding Materials contain registered trademarks that belong to CITGO, including the iconic CITGO logo, which features a trimark and the stylized logo type "CITGO." *See* U.S. Trademark Registration Nos. 0844353 and 0836105 on the Principal Register.

Symbolizing power, energy, and progressiveness, CITGO's iconic trimark has been in use by CITGO continuously since 1965 and has, for many, become a symbol of comfort, inspiration, and pride.[2] Since then, CITGO has expended substantial amounts of money to promote its name and establish its trademarks in the competitive market for petroleum products. These trademarks are valuable assets and are represented in physical form in the Branding Materials and various other indicia of CITGO's brand. CITGO's trademarks represent to consumers that the Motor Fuels sold from Locations displaying the trademarks meet CITGO's high standards for quality and that the Locations may be relied upon to provide the quality of product that consumers have come to expect from CITGO.

45.     CITGO communicates its expectations regarding its image and the proper use of its protected marks to its marketers in the MFA.  *See, e.g.,* MFA at § 6.  In the MFA, Sat Raj agreed to "not allow nor permit the use of CITGO's brand names, trademarks, trade dress, and all other forms of CITGO identification" in connection with the resale of Motor Fuels that were not purchased from CITGO under the MFA. *Id.* at § 6(b). In addition, the MFA required Sat Raj to clearly identify and label any non-CITGO Motor Fuels "in print at least comparable in size to CITGO's brand names, trademarks, trade dress, and other forms of CITGO identification in order to make it unmistakably clear that such Motor Fuels are not CITGO Motor Fuels." *Id.* at §6(c). Despite these contractual obligations, Sat Raj has sold non-CITGO-branded Motor Fuels from certain Locations while displaying CITGO's trademarks and Branding Materials.  As such, Sat Raj has violated the MFA and is therefore in breach of that contract.  *See id.* at §12.

46.     Federal law also prohibits Sat Raj from using CITGO's trademarks to sell non-CITGO Motor Fuels. Section 32 of the Lanham Act prohibits the use in commerce of a

---

[2]       In but one example, CITGO's signage in Kenmore Square has been part of Boston's skyline since 1940 and is held in particularly high regard by Boston sports fans and baseball fans across the globe. *See The CITGO Sign in Boston's Kenmore Square*, https://www.citgo.com/AboutCITGO/BostonSign.jsp.

registered mark in connection with the sale of any goods without the consent of that mark's registrant. *See* 15 U.S.C. § 1114. As evidenced by the MFA, CITGO has not consented to the sale of unbranded Motor Fuels while displaying CITGO Branding Materials. *See* MFA at §6(b). Moreover, Sat Raj's sale of non-CITGO Motor Fuels while displaying CITGO's trademark violates Section 43(a) of the Lanham Act, which prohibits the false designation of the origins of goods or services.  *See* 15 U.S.C. § 1125. By selling inferior, non-CITGO Motor Fuels under CITGO's Branding Materials, Sat Raj is appropriating CITGO's goodwill and harming CITGO's standing within the local market.

47.     Notwithstanding CITGO's termination of the MFA on May 17, 2018, revoking Sat Raj's authorization to use CITGO's brand and identifying marks, Sat Raj continues to use CITGO's brand names, trademarks, or other forms of identification. Sat Raj's continued use of CITGO's brand names, trademarks, or other forms of identification without CITGO's authorization violate the MFA and the Lanham Act.

## IV.    CLAIMS AND CAUSES OF ACTION

### A.    First Cause of Action: Breach of Contract against Sat Raj for Failure to Remit Payment for Fuel Purchases and Other Charges

48.     CITGO hereby incorporates paragraphs 1 through 47 as though fully set forth herein.

49.     The MFA is a valid contract and is enforceable by and binding upon Sat Raj and CITGO.

50.     Under the terms of the MFA, Sat Raj agreed to purchase and lift specified quantities of Motor Fuels, and CITGO agreed to sell and deliver such Motor Fuels to Sat Raj. MFA § 2. Sat Raj agreed to pay CITGO for the Motor Fuels in accordance with the terms

prescribed by CITGO's Credit Department and by the date set forth on each invoice.  *See id.* at §
5(a).

51.     CITGO has fully performed its obligations as required by the MFA.

52.     Sat Raj lifted Motor Fuels from CITGO's terminal, but has failed to remit full
payment to CITGO.  Sat Raj has also incurred additional charges for which it has failed to remit
payment to CITGO, including unpaid EPOS charges.  Sat Raj owes CITGO $839,567.48 in
unpaid fuel purchases and other related charges. Despite demand, Sat Raj has failed to fulfill
these payment obligations to CITGO.  Sat Raj's failure to perform is not excused by any reason.

53.     Sat Raj's failure to pay the amounts due and owing to CITGO constitutes a breach
of contract. CITGO has sustained damages because of Sat Raj's breach and is therefore entitled
to recover monetary damages, as well as attorneys' fees, interest, and costs.

**B.      Second Cause of Action: Breach of Contract against Sat Raj for Failure to
Remit Payment for Unamortized Branding Materials**

54.     CITGO hereby incorporates paragraphs 1 through 47 as though fully set forth
herein.

55.     The MFA is a valid contract and is enforceable by and binding upon Sat Raj and
CITGO.

56.     Under the terms of the MFA between CITGO and Sat Raj, CITGO may furnish
certain Branding Materials to Sat Raj for display at CITGO-branded retail locations to which Sat
Raj supplies CITGO Motor Fuels.  The MFA further provides that the costs associated with these
Branding Materials, including any installation costs paid by CITGO, shall be amortized over a
sixty-month period on a straight-line basis.  Sat Raj must pay CITGO the unamortized portion of
such costs should any of the Locations debrand within the amortization period.  *Id.* at § 6(j).

57.     CITGO furnished such Branding Materials to Sat Raj for distribution at CITGO-branded Locations.   As a result of Sat Raj's sale of non-CITGO Motor Fuel from CITGO-branded service stations, CITGO terminated the MFA and debranded these Locations.   The unamortized balance for the Branding Materials distributed to these Locations is $562,946.61. Sat Raj is contractually obligated to pay this sum to CITGO.   MFA § 6(j).

58.     CITGO has fully performed its obligations as required by the MFA.   Despite demand, Sat Raj has failed to remit payment to CITGO for the Branding Materials furnished by CITGO. Sat Raj's failure to perform is not excused by any reason.

59.     Sat Raj's failure to pay the amounts due and owing to CITGO constitutes a breach of contract. CITGO has sustained damages because of Sat Raj's breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

**C.     Third Cause of Action: Breach of Contract against Sat Raj for Selling Non-CITGO Motor Fuels Using CITGO Branding Materials**

60.     CITGO hereby incorporates paragraphs 1 through 47 as though fully set forth herein.

61.     The MFA is a valid contract and is enforceable by and binding upon Sat Raj and CITGO.   CITGO has fully performed its obligations as required by the MFA.

62.     The MFA prohibits Sat Raj from using CITGO's Branding Materials in connection with the sale of Motor Fuels that were not obtained from CITGO under the MFA. MFA at §6(b). The MFA also requires Sat Raj to identify and label any non-CITGO Motor Fuels it sells in order to make it unmistakably clear to consumers that such Motor Fuels are not CITGO Motor Fuels. MFA at §6(c).

16

63.     Upon information and belief, Sat Raj has sold non-CITGO Motor Fuels under CITGO's trademarked Branding Materials to consumers. Furthermore, Sat Raj has failed to clearly label non-CITGO Motor Fuels that it sold as required by the MFA.

64.     Sat Raj's sale of non-CITGO Motor Fuels from locations displaying CITGO's Branding Materials constitutes a breach of contract. Sat Raj's failure to lift CITGO Motor Fuels coupled with its sale of non-CITGO fuel from CITGO-branded service stations has deprived CITGO of revenue it would have otherwise received. CITGO has sustained damages because of Sat Raj's breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

**D.     Fourth Cause of Action: Trademark Infringement under the Lanham Act**

65.     CITGO hereby incorporates paragraphs 1 through 47 as though fully set forth herein.

66.     CITGO owns U.S. Trademark Registration Nos. 0844353 and 0836105 on the Principal Register for the CITGO Logo. These trademarks are incorporated in the Branding Materials and are valuable assets which identify the products sold under their display as conforming to the standards of quality for which CITGO has become synonymous and CITGO's customers have come to expect. CITGO has invested and continues to invest substantial sums of money promoting its products and services offered under these trademarks, which are instantly recognizable and sought out by CITGO's loyal customers.

67.     Upon information and belief, Sat Raj has sold non-CITGO Motor Fuels under CITGO's trademarked Branding Materials to consumers.  CITGO did not authorize Sat Raj to use trademarked CITGO Branding Materials to sell non-CITGO Motor Fuels and, in fact, specifically prohibited Sat Raj from such conduct in the MFA.  In spite of CITGO's May 17, 2018 termination of the MFA and contemporaneous instruction to debrand, Sat Raj continues to

use CITGO's brand names, trademarks, or other forms of identification without CITGO's authorization.

68.    As such, Sat Raj's infringement and misappropriation of CITGO's trademarked and protected images are willful, knowing and intentional.

69.    Sat Raj's unauthorized use of CITGO's trademarks in the Branding Materials in connection with its sale of non-CITGO Motor Fuels is likely to cause confusion, to cause mistake, or to deceive customers and potential customers of the parties by suggesting that the Motor Fuels were produced, marketed or sold by CITGO.  Moreover, by selling non-CITGO Motor Fuels under CITGO trademarks, Sat Raj is also misrepresenting the quality and characteristics of the fuel to consumers. The non-branded fuel sold by Sat Raj at CITGO-branded locations is likely of inferior quality and the sale of such products from locations displaying CITGO Branding Material has therefore injured CITGO's reputation for high quality goods.

70.    The aforesaid acts of Sat Raj are likely to cause consumers to believe that the sale of such fuel is authorized, sponsored or approved by CITGO and that such products are subject to the same quality control and regulation required by CITGO, which is not accurate.

71.    Sat Raj's actions, as described above, constitute multiple violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). The aforesaid distribution and sale of non-branded fuel bearing the trademarks, service marks, likenesses, logos and other indicia of CITGO constitutes a false designation of the source of origin of such goods and falsely describes and represents such products. *See* 15 U.S.C. § 1125(a). In addition, Sat Raj's use of CITGO's trademarks without the consent of CITGO in connection with the sale of unbranded gasoline constitutes an infringement of CITGO's valuable trademarks. *See* 15 U.S.C. § 1114.

72.     CITGO has been injured by Sat Raj's conduct.  Not only has Sat Raj likely harmed CITGO's image and goodwill amongst consumers, but CITGO has lost revenue as a result of Sat Raj's sale of non-CITGO Motor Fuels from these Locations and its concomitant failure to lift and purchase CITGO Motor Fuels from CITGO.  CITGO is, thus, entitled to all damages resulting from Sat Raj's conduct, including but not limited to actual damages, infringing profits, statutory damages, costs, attorneys' fees, and other relief provided under the Lanham Act.  *Id.* at § 1117.

**E.     Fifth Cause of Action: Breach of the Guaranty against Multani**

73.     CITGO hereby incorporates paragraphs 1 through 47 as though fully set forth herein.

74.     The MFA obligates Sat Raj to furnish a personal guaranty at CITGO's request. MFA § 5(b). Pursuant to this obligation, Multani executed the Guaranty for Sat Raj's indebtedness in favor of CITGO.  CITGO relied upon the Guaranty in extending credit to Sat Raj for Motor Fuels purchases under the MFA.

75.     The Guaranty is a valid contract, and is enforceable by and binding upon Multani and CITGO.

76.     Under the terms of the Guaranty, Multani unconditionally guaranteed the payment when due of all of Sat Raj's indebtedness to CITGO up to $700,000. Guaranty § 1.

77.     Sat Raj has failed to fulfill its payment obligations to CITGO as required by the MFA and the invoices.  Sat Raj is currently indebted to CITGO in the amount of $839,567.48 in unpaid fuel purchases and other related charges, exclusive of the permitted service charge. In addition, the unamortized balance for the Branding Materials distributed to Sat Raj's Locations is $562,946.61. After accounting for credits in Sat Raj's favor, Sat Raj is indebted to CITGO in the amount of $545,166.31 for unpaid fuel purchases, the unamortized balance for Branding

19

Materials, and other charges under the MFA, exclusive of interest and reimbursable costs. These amounts are also exclusive of attorneys' fees, costs, expenses, or other chargeable amounts for which Sat Raj is responsible. Sat Raj is also responsible for damages relating to its violations of the Lanham Act. CITGO's damages are increasing daily.

78.     Pursuant to its rights under the Guaranty, CITGO tendered Sat Raj's indebtedness to Multani on May 17, 2018. Despite demand, Multani has failed to make, or cause to be made, the payments due and owing to CITGO as required by the Guaranty.

79.     The failure of Multani to make, or cause to be made, all payments due and owing to CITGO by Sat Raj constitutes a breach of the Guaranty. CITGO has sustained damages because of Multani's breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

## PRAYER

For the above reasons, CITGO asks that Sat Raj be cited and made to appear herein and answer the above allegations, and that judgment be rendered in favor of CITGO as follows:

a)  A judgment that Sat Raj breached its obligations under the Marketer Franchise Agreement by failing to remit payment for fuel purchases and is accordingly liable to CITGO for all lawful monetary damages;

b)  A judgment that Sat Raj breached its obligations under the Marketer Franchise Agreement by failing to remit payment for unamortized branding materials and is accordingly liable to CITGO for all lawful monetary damages;

c)  A judgment that Sat Raj breached its obligations under the Marketer Franchise Agreement by selling non-CITGO Motor Fuels under CITGO's Branding

Materials and is accordingly liable to CITGO for all lawful monetary damages;

d) A judgment that Sat Raj infringed CITGO's trademarks incorporated in the Branding Materials by selling non-CITGO Motor Fuels under CITGO's Branding Materials and is accordingly liable to CITGO for all lawful monetary damages, including Sat Raj's profits resulting from its infringement;

e) A judgment that Multani breached his obligations under the Guaranty and is accordingly liable to CITGO for all lawful monetary damages;

f) Reasonable attorneys' fees;

g) Costs of suit;

h) Pre- and post-judgment interest; and

i) Such other and further relief to which CITGO may show itself to be justly entitled.

Respectfully submitted,

By: */s/ Aaron Crane*
Aaron R. Crane
Texas SBN 24050459
Southern District ID No. 619093
Blake A. Jenkins
Texas SBN 24097885
Southern District ID No. 2887814
609 Main, Suite 4200
Houston, Texas 77002
T        (713) 632-1400
D        (713) 632-1420
F        (713) 632-1401
aaron.crane@hoganlovells.com
blake.jenkins@hoganlovells.com

**Counsel for Plaintiff,**
**CITGO Petroleum Corporation**